TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00471-CV






Buddy Gregg Motor Homes, Inc., Appellant


v.


Marathon Coach, Inc.; Brett Bray; L. David Brunke; and the Motor Vehicle Division

of the Texas Department of Transportation, Appellees






DIRECT APPEAL ON REMOVAL FROM THE DISTRICT COURT OF TRAVIS COUNTY
53RD JUDICIAL DISTRICT, NO. D-1-GN-08-002098A






O P I N I O N



 This appeal presents substantive and procedural issues concerning the "hybrid claims
resolution process" for certain civil damages claims relating to the sale of motor vehicles in Texas.
See Subaru of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222-26 (Tex. 2002). It
arises from proceedings following our decision in Buddy Gregg Motor Homes, Inc. v. Motor Vehicle
Board of the Texas Department of Transportation, 156 S.W.3d 91 (Tex. App.--Austin 2004,
pet. denied) (Buddy Gregg I). To summarize the proceedings that followed Buddy Gregg I, the
private parties involved in that appeal--appellant Buddy Gregg Motor Homes, Inc. (Buddy Gregg)
and appellee Marathon Coach, Inc. (Marathon)--litigated before appellee the Motor Vehicle
Division ("Division") of the Texas Department of Transportation whether the Division (1) order that
we had addressed in Buddy Gregg I conclusively established (as Buddy Gregg contended) or negated
(as Marathon suggested) a violation by Marathon of Texas's prohibition against vertical integration
of motor vehicle dealers and manufacturers. The Division issued an order finding and declaring that
its earlier order did not have the effect of establishing a violation and that no violation had occurred.
Buddy Gregg then sought judicial review of the Division's order in the district court, (2) and Marathon
removed the cause to this Court. In three issues, Buddy Gregg argues that the Division's order
must be reversed because it is based on legal error, is the product of improper procedure, and is
not supported by substantial evidence. We will overrule these contentions and affirm the
Division's order. 


BACKGROUND


 Before turning to the lengthy history of the dispute underlying this appeal, it is helpful
to note three key features of Texas's regulatory regime governing motor vehicle sales, which
provide its context. First, the legislature has defined several statutory categories of participants
in the Texas motor vehicle sales and distribution market and required each type of participant to
obtain corresponding licenses from the Division in order to conduct those activities in the state.
See generally Tex. Occ. Code Ann. § 2301.002 (West Supp. 2009). (3) Among the regulatory and
licensing classifications relevant to the underlying dispute are "manufacturers" (persons who
manufacture or assemble new motor vehicles), "dealers" (retail sellers of motor vehicles), and
"franchised dealers" (dealers with a franchise agreement with a manufacturer of motor vehicles). 
See id. § 2301.002(7), (16), (19).

 The second pertinent feature of the regulatory regime is a prohibition
against "vertical integration" of motor vehicle "dealers" and "manufacturers." Currently found
in section 2301.476(c) of the occupations code, the prohibition, in relevant part, generally bars a
motor vehicle "manufacturer" from owning an interest in, operating, or controlling a motor vehicle
"dealer" or "dealership" or acting in the capacity of a "dealer." Id. § 2301.476(c) (West Supp. 2009). 

 The third notable feature of the regime relates to the Division's jurisdiction to initially
decide certain issues involving the construction or application of the statutes governing
motor vehicle sales and distribution. At all relevant times, the legislature has delegated to the
Division "the exclusive original jurisdiction to regulate those aspects of the distribution, sale,
or lease of motor vehicles that are governed by this chapter [2301 of the occupations code], including
the original jurisdiction to determine its own jurisdiction." Tex. Occ. Code Ann. § 2301.151(a)
(West 2004). In a pair of seminal cases, the Texas Supreme Court addressed the implications of this
jurisdictional grant in civil actions that are predicated on construction or application of the Code. In Subaru of America, Inc. v. David McDavid Nissan, Inc., the supreme court held
that in suits alleging Code violations as the basis for a cause of action for damages created by the
Code itself (what the court termed a "Code-based" claim), the legislature contemplated a "hybrid
claims resolution process" whereby a plaintiff must first exhaust his remedies before the Division
"to obtain a [Division] decision about Code violations, if any, to support a [Code-based] claim based
on Code violations." 84 S.W.3d at 224; see also id. at 224-26 (discussing Code-created cause of
action under DTPA for certain Code violations and Code-created claim for breach of Code-imposed
duty of good faith and fair dealing). Assuming the plaintiff obtains a final Division finding of a
Code violation, the supreme court explained, the plaintiff can then seek recovery of damages under
his Code-based claim in the trial court, which must treat the Division's findings as "wholly binding."
Id. at 224-25. The supreme court further held that this "hybrid claims resolution process" is also
implicated when a civil claim is predicated on a regulatory decision that the Code delegates to
the Division. See id. at 226 (dealer's breach-of-oral-contract claim that was "predicated on the
assumption that the [Division] would have allowed the [dealership] relocation and granted the
license" to the dealer for the new location, a decision that the Code delegated exclusively to the
Division); see also Butnaru v. Ford Motor Co., 84 S.W.3d 198, 207 (Tex. 2002) (explaining that this
holding in Subaru "relied on a Code provision mandating that a dealer obtain the [Division's]
approval and a license before operating a franchise in a certain area"). 

 On the other hand, the supreme court has indicated that not all claims raising some
sort of Code-construction issue fall within the Division's exclusive jurisdiction to resolve "those
claims and issues the Code governs." See Butnaru, 84 S.W.3d at 200, 205-08. In Butnaru, after a
deal to sell a Ford dealership fell apart over Ford's invocation of a contractual right of first refusal
with the dealer, the prospective transferee asserted tortious-interference and declaratory-judgment
claims challenging whether the right of first refusal violated the Code so as to be unenforceable.
Contrasting the claims at issue in Subaru, the supreme court observed that "no Code provision
extends the [Division's] exclusive jurisdiction to resolving the Butnarus' tortious interference and
declaratory judgment claims," but instead demonstrated the absence of any such jurisdictional grant
by "failing to establish any procedure through which the [Division] may resolve a prospective
transferee's claim that a manufacturer unlawfully refused to accept a dealer's transfer request"
coupled with the Division's inability to award monetary damages. Id. at 207-08. The court
continued, however, to address whether the claims nonetheless implicated the primary-jurisdiction
doctrine, and held that they did. See id. at 208-09 (reasoning that the claims "raise a Code
construction issue that is within the [Division's] special competence and expertise" and that the State
had an interest "in a uniform interpretation of the Code").

 With these features of the regulatory regime governing Texas motor vehicle sales as
a backdrop, we now turn to the history of the dispute underlying this appeal.


The First Agency Proceeding and Buddy Gregg I

 At relevant times, appellee Marathon was in the business of purchasing bus "shells"
from Prevost Car, Inc. (Prevost), installing various luxury amenities in the passenger compartment
to create what the ALJ termed "the earthbound equivalent of a corporate jet," and selling the finished
coaches at retail. See Buddy Gregg I, 156 S.W.3d at 94, 96. Marathon desired to open a retail sales
and service facility in the Dallas-Fort Worth area and began exploring how it might obtain the
licenses necessary to do so. Mindful of Texas's prohibition against vertical integration of
motor vehicle manufacturers and dealers, Marathon had a series of contacts with the Division in an
effort to persuade the agency that it should not be classified as a "manufacturer" of the luxury
coaches it would sell at the facility, but should instead be licensed as a "converter" of Prevost-manufactured motor vehicles. See Tex. Occ. Code Ann. § 2301.002(4), (5), (6). These contacts and
discussions included Marathon's transport of a finished coach to the Division's headquarters in
Austin, where it was inspected by the Division's director and the director of the Division's licensing
division. After obtaining an informal opinion from the Division's director of licensing that it was
indeed a converter of Prevost-manufactured motor vehicles rather than a manufacturer of the coaches
it sold, Marathon applied for and, in January 2002, obtained from the Division licenses to operate
as a converter and a franchised dealer of Prevost-manufactured motor vehicles. See Buddy Gregg
I, 156 S.W.3d at 96. Marathon began operating under converter and franchised dealer licenses at a
new Grand Prairie facility in March 2002. See id.

 Marathon's entry into the market prompted appellant Buddy Gregg, which operates
a competing motor home dealership in Lewisville, to file a formal complaint with the Division.
Buddy Gregg asserted that the agency had improperly licensed Marathon as a converter and
franchised dealer because Marathon should instead be considered a manufacturer of the coaches
it sold. Relying on its enforcement powers, the Division docketed the matter as a contested-case
hearing and permitted Buddy Gregg to participate in the proceedings (the "First Agency
Proceeding"). See id. at 97, 101-02. When issuing its notice of hearing, the Division imposed the
statutory stay now codified in section 2301.803 of the occupations code. See Tex. Occ. Code Ann.
§ 2301.803 (West 2004). (4)

 During the First Agency Proceeding, Marathon and Buddy Gregg filed agreed
stipulations that, since March 2002, Marathon had owned an interest in and had been operating
and controlling a Texas dealership and had been acting in the capacity of a dealer. Following a
contested-case hearing, the ALJ prepared a proposal for decision (PFD) containing findings that
since March 2002, Marathon had been licensed and conducted business as a converter and franchised
dealer in its Grand Prairie facility and concluding that the Prevost shells delivered to Marathon
were "motor vehicles," that "Marathon is not a motor home manufacturer," and that Marathon
"has been lawfully licensed" as a motor vehicle converter and franchised dealer. However, in
March 2003, the Division (actually, the former Motor Vehicle Board) adopted the ALJ's findings
but not his conclusions. The Board, by a single vote, modified the ALJ's proposed conclusion
regarding Marathon's status as a manufacturer to state, "Marathon is a motor home manufacturer"
(emphasis added), and rejected the other proposed conclusions. However, in its final order, the
Division did not immediately disturb the status quo or impose any sanctions, but instead gave
Marathon "up to 12 months from the date this order is final to restructure its licenses in accordance
with the above findings and conclusions." 

 Both Marathon and Buddy Gregg sought judicial review of the Division's order in the
district court, which consolidated the two causes. Buddy Gregg then removed the consolidated case
to this Court. On appeal, Marathon challenged the Board's conclusion that it was a "motor home
manufacturer" and Buddy Gregg's "standing" with respect to the agency proceeding and subsequent
suit for judicial review. Buddy Gregg, on the other hand, urged that the Division had acted outside
its authority in giving Marathon twelve months to restructure its licenses. Buddy Gregg further
complained that under Subaru it was entitled to specific findings by the Division to the effect that
Marathon had violated the vertical-integration prohibition as the first step in the "hybrid claims
resolution process," to serve as the predicate for Buddy Gregg to pursue a civil damages suit against
Marathon. Id. at 103-04; see Subaru, 84 S.W.3d at 222-26. We overruled all of these contentions
and affirmed the Division's order. Central to our disposition of the procedural and jurisdictional
issues was our view that the Division proceeding, at bottom, was an exercise of the agency's
enforcement powers, an arena in which the legislature had afforded it broad discretion with
respect to its procedures for determining licensing questions and its choice of remedies for any
licensing errors or violations it found. See Buddy Gregg I, 156 S.W.3d at 101-03. With respect to
Buddy Gregg's contention that Subaru required the Division to make additional fact findings of
vertical-integration violations, we concluded that it had failed to preserve the complaint by raising
it before the Division. Id. at 104.

 Both Buddy Gregg and Marathon filed petitions for review with the supreme court,
which denied each in December 2005.


The Second Agency Proceeding and this appeal

 In the meantime, the Division, exercising an explicit grant of authority under
the Code, had suspended its enforcement of its First Agency Proceeding order during the pendency
of the Buddy Gregg I appeals. See Tex. Occ. Code Ann. § 2301.755 (West 2004). Once
the supreme court denied review and the judgment became final, the twelve-month period that
the First Agency Proceeding order gave Marathon to restructure its licenses and operations to
comply with the order began to run. There is no dispute that this restructuring period ended on
November 30, 2006, by which time Marathon had taken steps to comply with the order, including
obtaining a manufacturer's licenses and transferring its dealership to another entity. Those
restructuring measures are ultimately not directly at issue in this appeal.

 In January 2006, however, Buddy Gregg sued Marathon in Tarrant County
district court. It asserted several causes of action, each of which was predicated on an allegation
that Marathon had been in continuous violation of the vertical-integration prohibition since it began
its Grand Prairie operations in March 2002: (1) a cause of action under section 2301.805 of the
occupations code for relief under the DTPA, see Tex. Occ. Code Ann. §§ 2301.351, .805
(West 2004) (providing cause of action for relief under DTPA for persons sustaining damages as a
result of, inter alia, a dealer's violation of a Division rule); see also Subaru, 84 S.W.3d at 225
(discussing this type of "Code-based" claim); (2) common-law causes of action for "unfair
competition" and (3) tortious interference with its prospective business relationships; and causes of
action for (4) "violation of code" and (5) violation of the statutory stay. Based on these causes of
action, Buddy Gregg prayed for actual, additional, and exemplary damages, attorney's fees, and
injunctive relief.

 In its petition, Buddy Gregg took the position that it had already exhausted, through
the First Agency Proceeding, any administrative remedies it was required to pursue before
prosecuting its claims in district court. It maintained that the Division's conclusion that "Marathon
is a motor home manufacturer," coupled with the Division's rejection of the ALJ's proposed
conclusions that Marathon had been "lawfully licensed" and that Prevost bus shells were
"motor vehicles" and the unchallenged findings that Marathon had been acting as a dealer, sufficed
as a final Division finding that Marathon was in violation of the vertical-integration prohibition and,
in turn, had been in violation of the statutory stay while the First Agency Proceeding was pending
before the Division. Having obtained this finding of a Code violation, Buddy Gregg reasoned, it
could proceed with the second phase of the "hybrid claims resolution process" in district court and
recover damages resulting from Marathon's violations.

 Marathon responded with a plea to the jurisdiction. It asserted that the Division had
exclusive jurisdiction to determine whether, as Buddy Gregg had asserted, it had violated the
Code or the statutory stay. Marathon further argued that, contrary to Buddy Gregg's contentions, the
Division had not made any findings or conclusions in the First Agency Proceeding that Marathon
had committed the Code violations that were the predicate for Buddy Gregg's claims. Consequently,
Marathon urged, the Tarrant County district court lacked subject-matter jurisdiction over
Buddy Gregg's claims and was required to dismiss them.

 While its plea was pending, on March 3, 2006, Marathon filed in the Division a
"notice of protest and request for declaratory relief" (the "Second Agency Proceeding"). Marathon
sought declarations from the Division's Director (appellee Bray) (5) that (1) the Division "did not make
or enter any findings that Marathon violated the Code, any statutory stay, or any [Division] rule"
in the First Agency Proceeding; (2) that Marathon "has not violated the Code, any statutory stay, or
any Board or Division rule, including but not limited to, because Marathon is not a motor home
manufacturer and holds valid licenses and, alternatively, because the period of time for Marathon
to restructure its licenses has not expired"; and (3) in the further alternative, "that Marathon did not
knowingly or intentionally commit any violations, and did not act with malice, gross negligence, or
in any unconscionable manner."

 After initiating the Second Agency Proceeding, Marathon amended its plea to the
jurisdiction to request, as an alternative to dismissal, abatement pending the Division's resolution
of the Second Agency Proceeding. The Tarrant County district court granted Marathon's plea and
abated the case pending its further orders.

 Thereafter, on April 28, 2006, Buddy Gregg filed an answer to Marathon's claims
in the Second Agency Proceeding. In addition to a general denial of the allegations in Marathon's
pleading, Buddy Gregg asserted affirmative defenses that the Division's order in the First Agency
Proceeding gave rise to res judicata and collateral estoppel barring Marathon's claims. Buddy Gregg
also asserted a counterclaim for declaratory relief as "a predicate to [its] common law and statutory
causes of action for damages against Marathon." Specifically, Buddy Gregg requested declarations
that Marathon was a mobile home manufacturer that had continuously violated the vertical-integration prohibition since March 2002 and had continuously violated the statutory stay during the
pendency of the First Agency Proceeding and thereafter. Relatedly, Buddy Gregg sought additional
declarations that Marathon had been in continuous violation of the Code's licensing requirements
and the statutory stay because it was not properly licensed to act as a dealer for the make and model
of "motor vehicle" it was retailing (i.e., it was licensed to act as a dealer for Prevost-make buses
rather than "Marathon-make motor homes").

 Buddy Gregg further requested declarations that Prevost and a wholly-owned
subsidiary, Prevost Car (U.S.), Inc. (Prevost U.S.), had been continuously acting directly or indirectly
as a dealer in Texas without obtaining the required license and that Marathon had aided and abetted
these alleged violations. See Tex. Occ. Code Ann. §§ 2301.351, .805 (Code-based claim for DTPA
relief can be based on one's aiding and abetting of another person's violation of the Code). Finally,
Buddy Gregg requested declarations that "[n]either the [Division] nor the Director had or has
statutory authority . . . to authorize or to license persons to violate the [Code] or to immunize
violators from legal or judicial consequences of their acts" or so authorized, licensed, or immunized
Marathon. Buddy Gregg also asserted a "cross-claim" against both Prevost and Prevost U.S. seeking
declaratory relief "as a predicate to [Buddy Gregg's] common law and statutory causes of action for
damages" against those entities. 

 The competing claims were assigned to a Division ALJ--the Honorable Terry J.
Johnson, the same ALJ who had presided in the First Agency Proceeding. Judge Johnson ordered
a pre-hearing conference to address, among other issues, whether there were any material facts in
dispute; the extent to which the issues were affected by this Court's decision in Buddy Gregg I;
whether Marathon had been in continuous violation of the Code since March 2002; whether the 
Division's order in the First Agency Proceeding had "immunized Marathon against violations of the
Code or ha[d] otherwise nullified portions of the Code in favor of Marathon"; whether or how the
statutory stay effectively "suspended" Marathon's licenses, as Buddy Gregg had suggested; and
whether Buddy Gregg's allegations regarding Prevost were properly the subject of a separate
complaint. Following the conference, the ALJ advised the parties that, in his view, the underlying
facts relevant to the case were "beyond credible dispute" and that, without hearing further evidence,
he would be issuing a proposal for decision (PFD) to the Director within 60 days. The ALJ further
indicated his views on the merits, including that "Marathon is not now, and has not been, operating
in violation of law." The ALJ added that, "as I advised counsel at hearing, Buddy Gregg's cross-claim/counter-claim relating to Prevost are beyond the scope and notice of this case" and should be
pursued in a separate action. 

 In response, Buddy Gregg made several filings demanding an evidentiary hearing
and discovery, urging that material fact issues were in dispute, and accusing the ALJ of
"prejudgment" of the case. The ALJ responded with a letter emphasizing that no further
hearings would be conducted and denying the discovery Buddy Gregg had requested. Thereafter,
Buddy Gregg made additional filings that included a second round of discovery requests and motions
to compel responses. Buddy Gregg also filed a motion to disqualify and remove the ALJ on grounds
that he "prejudged" the case and improperly "refused" to conduct an evidentiary hearing or
allow discovery. After receiving briefing from the parties and the ALJ, the Director denied the
disqualification motion.

 After its disqualification motion was denied, Buddy Gregg filed an amended answer
and counterclaim in the Division adding allegations and claims relating to Marathon's efforts to
restructure its operations and licenses against both Marathon and various third parties. These
third parties included CEMTSM, Inc., an entity to which Marathon was allegedly transferring its
dealership. Buddy Gregg's allegations were to the effect that Marathon's restructuring was a "sham"
and that Marathon, who would be licensed as a manufacturer, would retain direct or indirect control
over the dealership--an allegation that Marathon insisted was solely for purposes of harassment and
delay. With this, Buddy Gregg re-urged its disqualification motion, arguing that its new allegations
necessitated additional discovery concerning these "newly-discovered facts" that the ALJ was
already bent on denying. Buddy Gregg also moved to stay the administrative proceedings to afford
it time to request the Tarrant County district court to clarify the questions that the Division was to
decide. The Director referred Buddy Gregg's new allegations regarding Marathon's restructuring
to Division's director of licensing, but stood by his prior interim ruling denying Buddy Gregg's
motion to disqualify the ALJ, observing that the ALJ would have the opportunity to assess
whether Buddy Gregg's new pleadings necessitated additional discovery. Finally, as for
Buddy Gregg's motion to stay the administrative proceedings pending further direction from the
Tarrant County district court, the Director also referred the matter to the ALJ, directing him "to
determine if it is now clear that this is a 'McButnaru'[ (6)] proceeding and, if it is, whether to impose
a stay while [Buddy Gregg] approaches the Tarrant County District Court or if he has sufficient
information to proceed in the manner he deems appropriate."

 In response to the Director's letter ruling, the ALJ ruled that in light of the Director's
referral of Buddy Gregg's new allegations to the Division's licensing section, it would be "premature
and duplicative" to address these allegation in a contested-case hearing and that the allegations
were, in any event, "independent of the issues raised by the dispute at hand." The ALJ further
determined that "it is clear that the Tarrant County lawsuit has been abated for the purpose of having
the Motor Vehicle Division determine whether Marathon has violated the laws administered by this
agency" and, accordingly, denied Buddy Gregg's motion to stay the administrative proceedings.

 On December 28, 2006, the ALJ issued his PFD recommending that the Director
declare that Marathon had not been violating the Code by operating under its converter and dealer's
licenses. In support of this recommendation, the ALJ proposed fact findings (some of which were
actually conclusions of law) regarding the history of the First Agency Proceeding, Buddy Gregg I,
and the implications of those prior proceedings. Among the findings material to our analysis are: 


6. In January 2002, Marathon was licensed by the Motor Vehicle Division as a
converter and franchised dealer of Prevost coaches . . . .


7. Marathon has conducted business as a converter and franchise[d] dealer of
Prevost coaches since March 2002. . . . 


. . . . 


12. The Board [in the First Proceeding] did not find or conclude, and adopted no
finding or conclusion, that Marathon violated any statutory stay, any other
law or any Motor Vehicle Division rule. . . . 


13. The Board suspended enforcement of the order [for] 12 months to allow
Marathon time to restructure its licenses. . . . 


. . . . 


15. Enforcement of the order was suspended pending final determination of the
[Buddy Gregg I] appeal; the suspension ultimately terminated on November
30, 2006. 


. . . . 


21. The determination of whether Marathon has committed a violation of Tex.
Occ. Code Ann. § 2301.803 (Statutory Stay) is a matter within the exclusive
original jurisdiction of the Motor Vehicle Division. . . . .


22. The determination of whether Marathon has committed a violation of the
Tex. Occ. Code Ann. § 2301.476 (Manufacturer or Distributor Ownership,
Operation or Control of Dealership) is a matter within the exclusive original
jurisdiction of the Motor Vehicle Division. . . . 


23. Marathon held, and was operating lawfully under, valid licenses issued by the
Motor Vehicle Division when Buddy Gregg filed its complaint in [the First
Agency Proceeding].


24. Marathon did not violate Tex. Occ. Code Ann. § 2301.803 (Statutory Stay)
by operating under its licenses during the pendency of [the First Agency
Proceeding].


25. Marathon did not violate any provision of Tex. Occ. Code Ann. § 2301.476
(Manufacturer or Distributor Ownership, Operation or Control of Dealership)
by operating under its licenses during the pendency of [the First Agency
Proceeding].


26. Marathon did not violate any other statute or rule within the jurisdiction of
the Motor Vehicle Division by operating under its licenses during the
pendency of [the First Agency Proceeding].


27. The Board had full statutory authority to suspend enforcement of its order in
[the First Agency Proceeding] pending final determination of the appeal. 
(Tex. Occ. Code Ann. § 2301.755(2)). 


28. The Board lawfully suspended enforcement of its order in [the First Agency
Proceeding] pending final determination of the appeal [i.e., Buddy Gregg I].


29. Marathon did not violate Tex. Occ. Code Ann. § 2301.803 (Statutory Stay)
by operating under its licenses pending final determination of the appeal in
[the First Agency Proceeding; i.e., Buddy Gregg I].


30. Marathon did not violate any provision of Tex. Occ. Code Ann. § 2301.476
(Manufacturer or Distributor Ownership, Operation or Control of Dealership)
by operating under its licenses pending final determination of the appeal in
[the First Agency Proceeding; i.e., Buddy Gregg I].


31. Marathon did not violate any other statute or rule within the jurisdiction of
the Motor Vehicle Division by operating under its licenses pending final
determination of the appeal in [the First Agency Proceeding; i.e., Buddy
Gregg I].


32. Marathon obtained its licenses after good faith full disclosure of its
operations to the Motor Vehicle Division.



 After hearing oral argument, the Director issued a "final order" in July 2007 in which
he largely adopted the ALJ proposed findings, although he amended finding of fact 12 to state that
"[t]e Board did not expressly find or conclude, and adopted no finding or conclusion, that Marathon
violated any statutory stay, any other law or any Motor Vehicle Division rule." (Emphasis added.)
The Director also added a declaration that paralleled the amended finding of fact 12: "That the
Motor Vehicle Board did not expressly find or conclude, and adopted no finding or conclusion,
that Marathon violated any statutory stay, any other law, or any Motor Vehicle Division rule in [the
First Agency Proceeding]." Buddy Gregg filed a motion for rehearing arguing in part that Director
was biased due to his involvement in the First Agency Proceeding. "So as to simplify the ultimate
appeal and eliminate extraneous issues," the Director granted the motion and delegated his decision-making authority to L. David Brunke, the Division's director of consumer affairs.

 Brunke determined no further evidentiary hearings were required because there
were "no disputed facts regarding what must be determined," only questions of law. Brunke issued
a final order on behalf of the Division in April 2008 in which he adopted the Director's July 2007
order and declaration. (7) Buddy Gregg sought judicial review of this final order in Travis County
district court. (8) Marathon removed the cause to this Court. (9)


ANALYSIS


 Buddy Gregg brings three issues on appeal. In its first issue, Buddy Gregg asserts that
the Division erred as a matter of law in finding and declaring that Marathon had not violated the
Code's vertical-integration prohibition "when the findings and conclusions from the [First Agency
Proceeding], which were binding on the Division, conclusively established the violation" and relied
on factors--"the purported 'validity' of Marathon's licenses, the Board's choice of remedy in the
earlier proceeding, and Marathon's alleged 'good faith' in obtaining its licenses"--that were "legally
irrelevant." In its second issue, Buddy Gregg complains that the Division committed reversible error
in denying it discovery and an evidentiary hearing before issuing its final order. In its third issue,
Buddy Gregg urges that certain of the Division's findings and the Division's rejection of its
counterclaims were not supported by substantial evidence.


Standard of review

 The legislature has provided for judicial review of the Division's order under the
APA's substantial-evidence standard. Tex. Occ. Code Ann. § 2301.751(a) (West 2004). Under this
standard, we may not substitute our judgment for that of the Division on the weight of the evidence
on questions committed to its discretion. Tex. Gov't Code Ann. § 2001.174 (West 2008). However,
we must reverse and remand the Division's order if Buddy Gregg's substantial rights have been
prejudiced because the Division's findings, inferences, conclusions, or decisions (1) violate a
constitutional or statutory provision; (2) exceed the Division's statutory authority; (3) were made
through unlawful procedure; (4) were affected by other error of law; (5) are not reasonably supported
by substantial evidence considering the reliable and probative evidence in the record as a whole; or
(6) are arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise
of discretion. Id. § 2001.174(2). In sum, we review the fact findings for support by substantial
evidence, review legal conclusions for errors of law, and the proper test is whether the evidence in its
entirety is such that reasonable minds could have reached the conclusion that the agency must have
reached to justify its decision or whether the agency acted arbitrarily and without regard to the facts. 
H.G. Sledge, Inc. v. Prospective Inv. & Trading Co., Ltd., 36 S.W.3d 597, 602 (Tex. App.--Austin
2000, pet. denied).

 To the extent this analysis turns on construction of the occupations code, it presents
a question of law that we review de novo. See State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006).
Our primary objective in statutory construction is to give effect to the legislature's intent. Id. We
seek that intent "first and foremost" in the statutory text. Lexington Ins. Co. v. Strayhorn,
209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning
is supplied by legislative definition or is apparent from context, or unless such a construction leads
to absurd results. City of Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex. 2008); see Tex. Gov't
Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed
according to the rules of grammar and common usage."). However, with regard to a statute that an
agency is charged with enforcing, we give "serious consideration" to the agency's construction of it,
so long as that construction is reasonable and consistent with the statutory language. See First Am.
Title Ins. Co. v. Combs, 258 S.W.3d 627, 632 (Tex. 2008). 

 With respect to the evidentiary support for the Division's order, substantial evidence
does not mean "a large or considerable amount of evidence"; rather, substantial evidence is "'such
relevant evidence as a reasonable mind might accept as adequate to support a conclusion' of fact."
Lauderdale v. Texas Dep't of Agric., 923 S.W.2d 834, 836 (Tex. App.--Austin 1996, no writ)
(quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988) and Consolidated Edison Co. v. NLRB,
305 U.S. 197, 229 (1938)). The evidence in the record may preponderate against the agency's
decision and still provide a reasonable basis for the decision to satisfy the substantial-evidence
standard. Id. (citing Nucor Steel v. Public Util. Comm'n, 168 S.W.3d 260, 267 (Tex. App.--Austin
2005, no pet.)). The fact-finder determines the credibility of witnesses and the weight to give
their testimony. See Granek v. Texas State Bd. of Med. Exam'rs, 172 S.W.3d 761, 778
(Tex. App.--Austin 2005, no pet.). We may not set aside the ALJ's decision merely because
testimony was conflicting or disputed, or because it did not compel the decision. Sanchez v. Texas
State Bd. of Med. Exam'rs, 229 S.W.3d 498, 510 (Tex. App.--Austin 2007, no pet.) (citing
Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1996)).
Ultimately we are concerned not with the correctness of the ALJ's order, but with its reasonableness.
Id.

 Whether the ALJ's order is supported by substantial evidence is a question of law.
Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 562 (Tex. 2000). 


Jurisdictional and procedural posture

 Reflected in the parties' arguments concerning the issues Buddy Gregg raises
are disputes regarding the nature of the Division's jurisdiction and role in the Second Agency
Proceeding. (10) As these questions logically precede our analysis of Buddy Gregg's issues and provide
their jurisdictional and procedural context, we should begin by addressing them. 

 Consideration of the Division's jurisdiction and role in the Second Agency
Proceeding starts with the fundamental principle that administrative agencies "may exercise only
those powers the law, in clear and express statutory language, confers upon them." Subaru,
84 S.W.3d at 220. "Courts will not imply additional authority to agencies, nor may agencies
create for themselves any excess powers." Id. The courts are not divested by an agency of the
subject-matter jurisdiction they would otherwise possess to adjudicate a dispute unless the legislature
has granted the agency exclusive jurisdiction, or the sole power to make the initial determination in
the dispute. Id. at 221. 

 As previously mentioned, the legislature has delegated to the Division "the exclusive
original jurisdiction to regulate those aspects of the distribution, sale, or lease of motor vehicles
that are governed by [the Code]." Tex. Occ. Code Ann. § 2301.151(a). This jurisdictional grant to
the Division includes "the original jurisdiction to determine its own jurisdiction." Id. With respect
to civil claims for damages that are predicated on Code-construction or application issues, the
Texas Supreme Court, as noted, has held that the Division's exclusive jurisdiction is implicated in
two basic instances: (1) when a plaintiff asserts a "Code-based claim"--i.e., a cause of action based
on a Code violation that is created by the Code itself, see Subaru, 84 S.W.3d at 224-25; and (2) a
claim is predicated on the outcome of a regulatory decision that the Code delegates to the Division.
See id. at 226. In addition, other Code-related issues raised by civil claims may require judicial
abstention and deference under the doctrine of primary jurisdiction. See Butnaru, 84 S.W.3d at 205-08. In the Second Agency Proceeding, the Division found that "[t]he determination of whether
Marathon has committed a violation" of the vertical-integration prohibition or statutory stay "is a
matter within the exclusive original jurisdiction of the Motor Vehicle Division." This determination,
like others contained in the Division's final order, is subject to review under the substantial-evidence
standard. See Tex. Occ. Code Ann. § 2301.751(a), (c). 

 On appeal, retreating somewhat from its position in its Tarrant County district court
petition, Buddy Gregg questions whether its claims (all of which are predicated on the allegation that
Marathon violated the vertical-integration prohibition) implicate the Division's exclusive jurisdiction
as opposed to its primary jurisdiction. We conclude, for at least two reasons, that the Division
did not err in determining that it possessed exclusive jurisdiction to determine whether Marathon
had violated the vertical-integration prohibition. First, Buddy Gregg purports to assert at least
one "Code-based claim" predicated on Marathon's alleged violation of the vertical-integration
prohibition--a cause of action for DTPA relief under occupations code section 2301.805. See
Tex. Occ. Code Ann. § 2301.805; see also Subaru, 84 S.W.3d at 224-26 (terming this cause of action
a "Code-based claim"). (11) Consequently, Buddy Gregg was required to "obtain a [Division] decision
about Code violations, if any," to support its claim before it could recover damages in district court.
Id. at 224-25.

 The second reason relates to the pivotal question in the Second Agency Proceeding
of whether or how the Division's order in the First Agency Proceeding impacted its decision
as to whether Marathon violated the vertical-integration prohibition. Buddy Gregg's position
regarding that question is straightforward: (1) the statutory vertical-integration prohibition bars a
"manufacturer" from directly or indirectly owning an interest in a dealership, operating or controlling
a dealer or dealership, or acting in the capacity of a dealer, see Tex. Occ. Code Ann. § 2301.476(c);
(2) in the First Agency Proceeding, the Division found, and it was undisputed, that Marathon
had been owning and operating a dealership and acting as a dealer at its Grand Prairie facility; (3) in
the First Agency Proceeding, the Division concluded, with respect to the vehicles being sold at the
dealership, that "Marathon is a motor home manufacturer;" (4) ergo, the First Agency Proceeding
established as a matter of law that Marathon, a manufacturer, violated the vertical-integration
prohibition by owning and operating a dealership and acting as a dealer. The validity of
Buddy Gregg's argument ultimately depends on the point in time when the Division's order
concluding that "Marathon is a motor vehicle converter" took effect vis a vis the Division's initial
determination that Marathon was a converter. All of Buddy Gregg's causes of action are premised
on the view that this conclusion immediately--and, in effect, retroactively--established that
Marathon had been a manufacturer from the day it opened its dealership in March 2002. However,
we conclude that whether the Division's order in the First Agency Proceeding applied
retrospectively, as Buddy Gregg suggests, or prospectively, and the date on which it took effect, are
among the decisions that the legislature has delegated to the Division in the first instance.

 In addition to granting the Division "the exclusive original jurisdiction to regulate
those aspects of the distribution, sale, or lease of motor vehicles that are governed by [the Code],"
Tex. Occ. Code Ann. § 2301.151(a), the legislature has authorized it to "take any action that is
specifically designated or implied under this chapter or that is necessary or convenient" to the
exercise of that jurisdiction. Id. § 2301.151(b). The Division is also specifically charged with
administering the Code, see id. § 2301.152 (West 2004), and empowered with "all powers necessary,
incidental, or convenient to perform a power or duty expressly granted under this chapter," including
the power to "initiate and conduct proceedings, investigations, or hearings; . . . make findings
of fact on all factual issues arising out of a proceeding initiated under this chapter; . . . specify
and govern appearance, practice, and procedures before the board; . . . adopt rules and issue
conclusions of law and decisions, including declaratory decisions or orders; . . . issue, suspend, or
revoke licenses; [and] . . . enforce a [Division] order." Id. § 2301.153(a) (West 2004). Further, the
legislature has directed that the Code "be liberally construed to accomplish its purposes, including
the exercise of the state's police power to ensure a sound system of distributing and selling
motor vehicles through: (1) licensing and regulating manufacturers, distributors, converters, and
dealers of motor vehicles; and (2) enforcing this chapter as to other persons to provide for
compliance with manufacturer's warranties and to prevent fraud, unfair practices, discrimination,
impositions, or other abuse of the people of this state." See id. § 2301.001 (West 2004).

 In Buddy Gregg I, we concluded that the Division possessed authority under
this statutory scheme to suspend enforcement of its First Agency Proceeding order to give Marathon
12 months from the date the order became final to restructure its licenses. See Buddy Gregg I,
156 S.W.3d at 102-03. By tailoring when such licensing determinations take effect, the Division
can, among other goals within its statutory charge, avoid disruption to the "sound system of
distributing and selling motor vehicles" that the Code is supposed to achieve. Moreover, as the
Division found in the Second Agency Proceeding, it had explicit statutory authority to further
suspend enforcement of its First Agency Proceeding order for "good cause" pending the final
determination of Buddy Gregg I. See Tex. Occ. Code Ann. § 2301.755. It undisputedly did so.

 We think it follows from the foregoing grants of authority that the Division had
authority in the Second Agency Proceeding to initially determine the point in time when its
First Agency Proceeding order, including its conclusion that "Marathon is a motor home
manufacturer," became effective and altered the status quo of its original licensing determination
that Marathon was a converter. Because Buddy Gregg's causes of action presume a particular
outcome of that decision--i.e., that Marathon is considered a "manufacturer" retroactively to
March 2002--they implicate the Division's exclusive jurisdiction and could not proceed unless and
until that issue was first presented to the Division and resolved in Buddy Gregg's favor. See Subaru,
84 S.W.3d at 226. 

 In sum, the jurisdictional and procedural posture of the Second Agency Proceeding
was an exercise of the Division's exclusive, original jurisdiction to determine, as the first step in
the "hybrid claims resolution process" for Buddy Gregg's Code-based claim or claims, whether
Marathon had violated the vertical-integration prohibition. That inquiry required the Division to
evaluate the extent to which its order in the First Agency Proceeding, including its conclusion that
"Marathon is a motor home manufacturer," impacted that inquiry. That impact, in turn, depended
largely on the point in time when the order took effect, a matter that the Division had exclusive
power to determine in the first instance.

 With this understanding of the Division's jurisdiction and role in the Second Agency
Proceeding, we turn to the specific complaints Buddy Gregg has raised.


Vertical-integration prohibition

 In support of its first issue, Buddy Gregg maintains that the Division's First Agency
Proceeding order concluding that "Marathon is a motor home manufacturer," combined with the
Division's unchallenged findings that Marathon was operating a dealership, established that
Marathon had been violating the vertical-integration prohibition from the day it opened its
Grand Prairie facility in March 2002. This, in Buddy Gregg's view, ends the inquiry, and additional
considerations referenced by the Division in its Second Agency Proceeding order--Marathon's
licensing status, the Division's choice of remedies, or Marathon's "good faith"--are simply
irrelevant. Buddy Gregg further observes that the Division's finding and conclusion in the
First Agency Proceeding were binding on the Division in the Second Agency Proceeding, especially
where this Court affirmed the First Agency Proceeding order in Buddy Gregg I. See Freightliner
Corp. v. Motor Vehicle Bd., 255 S.W.3d 356, 363 (Tex. App.--Austin 2008, pet. denied).
Consequently, Buddy Gregg reasons, the Division in the Second Agency Proceeding erred in failing
to give preclusive effect to these findings and conclusions and instead adopting a contrary finding
and declaration that the "Board did not expressly find or conclude, and adopted no finding or
conclusion, that Marathon violated any statutory stay, any other law or any Motor Vehicle Division
rule" in the First Agency Proceeding and refusing to find in the Second Agency Proceeding that
Marathon had violated the vertical-integration prohibition.

 Buddy Gregg's arguments, as previously noted, presume that the Division's
First Agency Proceeding order concluding that "Marathon is a motor home manufacturer" had the
legal effect of establishing that Marathon was a manufacturer from the inception of its dealership
operations in March 2002. Whether the order had that effect, again, was a decision exclusively
for the Division in the first instance. The Division ruled against Buddy Gregg on that issue. It
determined that its First Agency Proceeding order concluding that Marathon was a motor home
manufacturer ultimately did not take effect until after Marathon had restructured its licenses
and business operations to comply with the order. The gravamen of the Division's "findings" or
conclusions, previously summarized, are that (1) the Division made an initial determination, before
Marathon began operations in 2002, that Marathon was a converter of Prevost buses, not a
manufacturer, and licensed it accordingly; (2) in March 2003, the Division issued its order in the
First Agency Proceeding determining, for the first time, that Marathon was a manufacturer rather
than converter, but suspended enforcement of the order for 12 months to give Marathon time to
restructure its licenses; (3) the Division further suspended enforcement of the order pending
final determination of the Buddy Gregg I appeal; and (4) these suspensions of enforcement ultimately
did not end until November 30, 2006. By this time, Marathon had already restructured its licenses
and business operations to, in effect, moot the vertical-integration complaint that had been the
immediate basis for Buddy Gregg's causes of action. Consequently, in the view of the Division
(which Marathon echoes), the First Agency Proceeding order did not establish a Code violation, but
instead, through the twelve-month restructuring period and suspension of enforcement during the
appeals, established that Marathon was never a "manufacturer" and/or had remained a "converter"
at all times relevant to Buddy Gregg's claims. Thus, the Division found in the Second Agency
Proceeding, Marathon did not violate the vertical-integration prohibition, other Code provisions, or
Division rules by "operating under its [converter and dealer] licenses" during the pendency of the
First Agency Proceeding, the Buddy Gregg I appeal, and the 12-month restructuring period. (12)

 In seeking reversal, Buddy Gregg argues essentially that the Code compelled the
Division to treat its First Agency Proceeding order concluding that "Marathon is a motor home
manufacturer" as effective retroactively as of March 2002 and thereafter. We have already
concluded that the Code grants the Division discretion to do otherwise. Buddy Gregg has not shown
that the Division committed legal error, acted outside of its authority, or is otherwise subject to
reversal under the substantial-evidence standard for determining that the First Agency Proceeding
order did not take effect until November 30, 2006. Consequently, Buddy Gregg's central premise
in arguing that the First Agency Proceeding order established a vertical-integration violation and
requires reversal of the Division's order in the Second Agency Proceeding fails. (13) 

 It follows from these conclusions that the Division's findings that Marathon was
initially licensed as a converter and that the Division suspended the effect of its First Agency
Proceeding order do not, as Buddy Gregg urges, demonstrate reliance on "legally irrelevant factors."
Instead, these factors are integral to and supportive of the Division's decision. Buddy Gregg
also complains that Marathon's "good faith full disclosure of its operations to the Motor Vehicle
Division," also cited in the Division's Second Agency Proceeding order, is legally irrelevant.
Assuming without deciding that Marathon's good faith is irrelevant to the controlling issues,
Buddy Gregg has not demonstrated that the Division's decision turned on this factor or that any
consideration of it prejudiced Buddy Gregg's substantial rights in the Second Agency Proceeding.
To the contrary, the Division's decision in the Second Agency Proceeding regarding when its
First Agency Proceeding order took effect was a function of the legal consequences of its prior
actions in the First Agency Proceeding of giving Marathon a twelve-month restructuring period and
suspending enforcement of the order pending appeal.

 We overrule Buddy Gregg's first issue.


Procedural rights

 In Buddy Gregg's second issue, it complains that Division's procedures in the
Second Agency Proceeding failed to comply with statutory and constitutional requirements. In
particular, Buddy Gregg argues that it was entitled to an evidentiary hearing and discovery
concerning "material facts" underlying the Division's order. This complaint is without merit. The
central issue in the Second Agency Proceeding, as previously explained, turned on a question
of law--when the Division's First Agency Proceeding order concluding that "Marathon is a
motor home manufacturer" took effect. There were no disputed material facts bearing on that
inquiry. Buddy Gregg has not shown its substantial rights were prejudiced by not having discovery
and an evidentiary hearing on these issues of law.

 Relatedly, Buddy Gregg also argues in its second issue that the Division erred or
abused its discretion in refusing to allow it to expand the scope of the Second Agency Proceeding
to include its claims against CEMTSM and other third parties. We cannot conclude the
Division erred or abused its discretion. Buddy Gregg's pending petition in Tarrant County
district court--what triggered the "hybrid claims resolution process" in this case--asserted claims
solely against Marathon. Although Buddy Gregg alleged that its claims against additional parties
in the Second Agency Proceeding were a predicate for civil damages claims that it had not yet filed
in court, we are aware of no requirement under the Code or elsewhere that compelled the Division
to permit Buddy Gregg to pursue the first stage of the "hybrid claims resolution process" as to its
new claims in the same proceeding as its original claims. See Buddy Gregg I, 156 S.W.3d at 102
("[T]he legislature has granted the [Division] wide discretion to fashion the procedural mechanisms
through which it exercises its jurisdiction.").

 We overrule Buddy Gregg's second issue.


Substantial evidence

 Finally, in its third issue, Buddy Gregg challenges some of the Division's findings
as not being supported by substantial evidence. In particular, Buddy Gregg complains of the
Division's findings that "Marathon obtained its licenses after good faith full disclosure of its
operations to the [Division]" and its findings that Marathon did not violate the Code or Division
rules by "operating under its licenses" during the pendency of the First Agency Proceeding and
Buddy Gregg I. As discussed in connection with Buddy Gregg's first issue, Buddy Gregg cannot
show harm with respect to the Division's finding of Marathon's "good faith." As for Buddy Gregg's
other challenges, the point of these findings (really conclusions of law), as previously explained, was
that Marathon, having previously been determined to be a converter and licensed accordingly,
retained that status, and did not become a "manufacturer," until November 30, 2006. For reasons
previously explained, the content of the First Agency Proceeding order and subsequent suspensions
of enforcement, all of which are undisputed, supported the Division's findings.

 Buddy Gregg also asserts that substantial evidence did not support the Division's
refusal to grant relief on its counterclaims. We have already concluded that the Division did
not err or abuse its discretion in declining to expand the Second Agency Proceeding to address
Buddy Gregg's claims against entities other than Marathon. To the extent Buddy Gregg is
complaining of the Division's disposition of its counterclaims against Marathon, we share the
observations of the Division and Marathon that Buddy Gregg's claims are merely the converse of
Marathon's affirmative declaratory claims, and thus were disposed of by the Division's grant of
relief to Marathon.

 We overrule Buddy Gregg's third issue.


CONCLUSION

 Having overruled Buddy Gregg's issues on appeal, we affirm the Division's order. 



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: September 10, 2010
1. Actually, our 2004 Buddy Gregg decision concerned an order of the former Texas Motor
Vehicle Board ("Board"). In 2005, the Board was abolished and its statutory responsibilities and
rules were transferred to the Division. Act of May 30, 2005, 79th Leg., R.S., ch. 281, §§ 7.01-.06,
2005 Tex. Gen. Laws 778, 839-40. It was the Division that issued the administrative order on appeal
in this cause. Subsequently, the legislature, effective November 1, 2009, transferred the Division's
functions to the newly created Texas Department of Motor Vehicles. See Act of May 18, 2009,
81st Leg., R.S., ch. 933, § 6.01(a), 2009 Tex. Gen. Laws 2485, 2519. To avoid unnecessary
confusion, we will generally use "the Division" to refer to both the Board and the Division.
2. Buddy Gregg named as defendants the Division; the Division's director, appellee
Brett Bray; and the Division's director of consumer affairs, appellee L. David Brunke. As explained
below, Bray issued an initial "final order" on behalf of the Division, but later recused on rehearing.
Responsibility of rendering the Division's final order was then delegated to Brunke, who adopted
Bray's prior findings and decision. We will use "the Division" to refer to these parties except when
the distinction is relevant.
3. When the underlying dispute originated, Texas's statutory regulations of motor vehicle
sales were contained in the Texas Motor Vehicle Commission Code, Tex. Rev. Civ. Stat. Ann.
art. 4413(36) (West 1976). Effective June 1, 2003, the Code was recodified without substantive
change in Chapter 2301 of the occupations code. Act of May 22, 2001, 77th Leg., R.S., ch. 1421,
§ 5, 2001 Tex. Gen. Laws 2570, 4921-68. Because neither party suggests there are any material
substantive difference between the Code and the occupations code versions of the provisions
applicable to this case, we will cite the occupations code version for convenience. However, we will
use "the Code" as shorthand for both the Motor Vehicle Commission Code and chapter 2301 of the
occupations code.
4. Section 2301.803 provides:


(a) On the initiation of a board proceeding, whether by complaint, protest, or
otherwise, a person who receives notice from the board of a statutory stay
imposed by this chapter may not allow or commit any act or omission that
would:


 (1) violate this chapter or any rule, order, or decision of the board;

 (2) affect a legal right, duty, or privilege of any party before the board; or

 (3) tend to render ineffectual a board order in a pending proceeding.


(b) A statutory stay imposed by this chapter remains in effect until vacated or
until the proceeding is concluded by a final order or decision. 


(c) A person affected by a statutory stay imposed by this chapter may initiate a
proceeding before the board to modify, vacate, or clarify the extent and
application of the statutory stay.


Tex. Occ. Code Ann. § 2301.803 (West 2004).
5. The Director has been delegated statutory authority to issue a declaratory decision
and order on behalf of the Division. See Tex. Occ. Code Ann. § 2301.101(a) (West Supp. 2009),
§ 2301.153(a)(8) (West 2004). 
6. An apparent reference to Subaru v. David McDavid Nissan, Inc
. and/or Butnaru. 
7. On the same day, appellees emphasize, Buddy Gregg sued Marathon, Bray, Brunke,
the ALJ, and CEMTSM in the U.S. District Court for the Northern District of Texas. The court
ultimately dismissed and abstained. Appellee emphasize this suit, along with Buddy Gregg's history
in Texas state court and the Division, as examples of what they perceive as litigiousness. In
response, Buddy Gregg makes no apologies for its zealousness in combating what it portrays as
illegal vertically integrated operations by a rival business.
8. See Tex. Occ. Code Ann. § 2301.751(a) (West 2004).
9. See id. § 2301.751(b). 
10. This is not the first time that such questions have arisen in the aftermath of Subaru
and Butnaru. See Ford Motor Co. v. Butnaru, 157 S.W.3d 142, 148 (Tex. App.--Austin 2005,
no pet.) ("Exactly what type of procedure the Texas Supreme Court contemplated in Butnaru and
Subaru . . . remains somewhat unclear.").
11. Marathon questions the ultimate viability of this cause of action. Section 2301.805
creates a cause of action for DTPA relief for (1) a "person" who "has sustained damages as a result
of a violation of Sections 2301.351-2301.354 or Section 2301.357," or (2) "a franchised dealer
who has sustained damages as a result of a violation of: (A) Sections 2301.451-2301.474; or (B)
[the DTPA]." Tex. Occ. Code Ann. § 2301.805 (West 2004). As Marathon observes, these cross-references do not include the statutory vertical-integration prohibition, which is found in
section 2301.476(c) of the occupations code. See id. § 2301.476(c) (West Supp. 2009). In asserting
its claim under section 2301.805, Buddy Gregg appears to presume that Marathon's alleged vertical
integration would constitute the violation of a rule by a dealer. See id. § 2301.351(1) (West 2004)
("A dealer may not . . . violate a board rule . . . ."). Whether Buddy Gregg has pled a viable cause
of action under section 2301.805, in our view, is not before us, but would instead be an issue
for the Tarrant County district court. The issue before us, rather, is whether the cause of action
Buddy Gregg purports to assert under section 2301.805 implicates the Division's exclusive
jurisdiction. Informed by Subaru, we conclude that it does.


 Similarly, we express no opinion regarding whether, as Buddy Gregg presumes in its
Tarrant County district court pleading, there exists a general private cause of action for damages
resulting from "violation of code" or violation of the statutory stay, or whether, assuming the alleged
Code violations occurred, either of Buddy Gregg's common-law claims would be viable.
12. The Division also suggests that it possesses broad authority in the first stage of the
"hybrid claims resolution process" simply to refuse to make findings of a Code violation if it sees
fit as a matter of regulatory discretion. Relatedly, it contends that because the Division's order in
First Agency Proceeding, even if containing fact findings corresponding to the statutory vertical-integration prohibition, did not contain a finding of a "Code violation" in so many words, and thus
signaled the Division's refusal to find a Code violation. In support of this view of its authority, the
Division cites our holding in Buddy Gregg I that the Division was not required to make the findings
of Code violations that Buddy Gregg had demanded in that case. See Buddy Gregg I, 156 S.W.3d
at 103-04. In Buddy Gregg I, however, we were not addressing the Division's duties in the "hybrid
claims resolution process" because Buddy Gregg had not preserved that question. Id. at 104. Our
holding regarding the Division's refusal to make the findings rested solely upon the broad discretion
vested in the Division with respect to its enforcement of the Code. See id. at 103-04.


 More generally, whatever discretion the Division possesses in the first stage of the
"hybrid claims resolution process" is, of course, not unbounded, but is a function of statute. See
Subaru, 84 S.W.3d at 220. Further, the legislature has made the Division's exercise of its powers
subject to judicial review under the substantial-evidence standard. See Tex. Occ. Code Ann.
§ 2301.751(a), (c). That is, the Division's "findings, inferences, conclusions, or decisions" may be
tested in court to determine if they are in violation of a constitutional or statutory provision; in excess
of the Division's statutory authority; made through unlawful procedure; affected by other error of
law; not reasonably supported by substantial evidence considering the reliable and probative
evidence in the record as a whole; or arbitrary or capricious or characterized by abuse of discretion
or clearly unwarranted exercise of discretion. See Tex. Gov't Code Ann. § 2001.174 (West 2008).
If a Division decision refusing to make findings of Code violations fails this test, the reviewing
court, while not empowered to make such findings itself, see Buddy Gregg Motor Homes, Inc.
v. Liberty Coach, Inc., 179 S.W.3d 589, 603 (Tex. App.--Austin 2005, pet. denied), nonetheless
must reverse and remand the order to the Division. See Tex. Gov't Code Ann. § 2001.174(2). 

 

 That being said, we intend no comprehensive explication as to where the outer parameters
of the Division's authority in the first stage of the "hybrid claims resolution process" might be. We
hold only that Buddy Gregg has not established that the Division's order on appeal exceeds that
authority or any other basis for reversal under the substantial-evidence standard.
13. In light of these holdings, we do not reach Marathon's assertions that Buddy Gregg waived
any right it possessed to obtain the findings required in the first stage of the "hybrid claims resolution
process" by failing to seek them from the Division in the First Agency Proceeding, see Buddy Gregg
I, 156 S.W.3d at 104, or address whether this complaint is properly directed to this Court or the
Tarrant County district court.